# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| KIMBERLY R. MURPHY, | : | Case No. 3:19-cv-359 |
| Plaintiff, | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| vs. | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

## DECISION AND ENTRY

### I. INTRODUCTION

In September 2015, Plaintiff Kimberly A. Murphy filed an application for Disability Insurance Benefits and for a period of such benefits. The claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, Administrative Law Judge (ALJ) Stuart Adkins concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review, and she subsequently filed the present action.

Plaintiff seeks a remand for benefits, or in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 9), the Commissioner's Memorandum in Opposition (Doc. No. 13), Plaintiff's Reply (Doc. No. 15), and the administrative record (Doc. No. 8).

## II. BACKGROUND

Plaintiff asserts that she has been under a disability since February 12, 2009. Plaintiff was thirty-seven years old on her date last insured. Accordingly, she was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563. She has at least a high school education.

The evidence of record related to Plaintiff's impairments is efficiently summarized in the ALJ's decision. (Doc. No. 8-2, PageID 61-75), Plaintiff's Statement of Errors (Doc. No. 9), the Commissioner's Memorandum in Opposition (Doc. No. 13), and Plaintiff's Reply (Doc. No. 15). Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as the Social Security Act defines it—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e.,

"substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241(citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence,

'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. THE ALJ'S DECISION

As noted previously, it fell to ALJ Adkins to evaluate the evidence connected to Plaintiff's applications for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment from the alleged disability onset date of February 12, 2009 through the date last insured of December 31, 2013.

Step 2: She had the following severe impairments: migraine headaches, neuralgia/fibromyalgia, irritable bowel syndrome.

Step 3: She did not have an impairment or combination of impairments that met or medically equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … subject to following limitations: she could lift as much as 20 pounds occasionally and ten pounds frequently; the claimant could stand and/or walk up to six hours during any given eight-hour workday; she could sit up to six hours during any given eight-hour workday; the claimant could push or pull without limitation (within the specified lifting confines); she could occasionally climb ladders, ropes, or scaffolds; she could

>frequently climb ramps or stairs; the claimant could frequently balance, stoop, kneel, crouch, or crawl."

Step 4: Plaintiff was capable of performing her past relevant work.

(Doc. No. 8-2, PageID 64-74). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability at any time from the alleged disability onset date through her date last insured. *Id.* at 75.

## V. DISCUSSION

There is primarily one issue pending before this Court. In large part, this issue centers on the assessment of Plaintiff's fibromyalgia. Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." Soc. Sec. R. 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). Notably, as the Sixth Circuit has emphasized on several occasions, fibromyalgia patients "generally 'present no objectively alarming signs.'" *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 861 (6th Cir. 2011) (citing *Rogers*, 486 F.3d at 243) (citations omitted). Therefore, "disability claims related to fibromyalgia are related to the *symptoms* associated with the condition—including complaints of pain, stiffness, fatigue, and inability to concentrate—rather than the underlying condition itself." *Id.* at 862 (emphasis in original) (citing *Rogers*, 486 F.3d at 247) (citation omitted).

Relevant here is the two-step process that the Social Security Administration uses in evaluating an individual's symptoms. First, the ALJ must determine whether an

individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. Soc. Sec. R. 16-3p, 2017 WL 5180304, *3 (Oct. 25, 2017). Second, the ALJ must evaluate the intensity and persistence of those symptoms and determine the extent to which the individual's symptoms limit her ability to perform work-related activities. *Id.* at *4. Related factors to consider include "the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; [and] the type, dosage, effectiveness and side effects of any medication taken to alleviate symptoms…" *Id.* at *7-8.

Plaintiff's fibromyalgia was classified as a severe impairment—but not without reservation. For instance, the ALJ deemed her fibromyalgia diagnosis to be "rather nebulous." (Doc. No. 8-2, PageID 66). This was based, at least in part, on the ALJ's finding that there was "no indication in the medical record that the requisite number of tender points to justify a medically determinable diagnosis of fibromyalgia was ever identified." *Id.* But this is not true. In fact, the record actually reflects that Plaintiff's treating physician, Dr. Jon Ryan, observed in May 2013 that she had "multiple tender points present 18 of 18 consistent with fibromyalgia." (Doc. No. 8-8, PageID 978). Prior to that time, the record reflects that on exam, Plaintiff repeatedly was observed to have "multiple tender points consistent with fibromyalgia." *Id.* at 989, 997, 1000, 1002.

In the same physical examination, Dr. Ryan also observed that Plaintiff's shoulder pain was accompanied by "excellent range of motion" and "excellent strength." *Id.* Dr.

Ryan's observations illustrate an important known fact about fibromyalgia—a fact that the Sixth Circuit has repeatedly emphasized. Fibromyalgia patients "typically 'manifest normal muscle strength and neurological reactions and have full range of motion.'" *Kalmbach*, 409 F. App'x at 861 (citing *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1998) (per curiam). And here, Plaintiff is no exception.

Yet, despite this well-established principle, the ALJ emphasized in assessing Plaintiff's fibromyalgia that "upon physical examination, the claimant exhibited normal range of motion and normal reflexes." (Doc. No. 8-2, PageID 66). He also highlighted that although her symptoms were primarily in her cervical spine, an "MRI scan of the cervical spine was normal." *Id.* This was in error. *See Lucas v. Comm'r of Soc. Sec.*, No. 1:13-cv-483, 2014 U.S. Dist. LEXIS 113126, *23 (S.D. Ohio July 18, 2014) (Litkovitz, M.J.), report and recommendation adopted, 2014 U.S. Dist. LEXIS 112832 (S.D. Ohio Aug. 14, 2014) (Spiegel, D.J.) (Finding error where the ALJ "relied on normal test results and normal physical findings, *i.e.*, normal 'strength, reflexes, gait, and range of motion,' none of which are relevant to the severity of plaintiff's fibromyalgia symptoms."); *see also Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 778 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 245). This error is not inconsequential because the emphasis on normal physical examination and testing in assessing her fibromyalgia demonstrates a fundamental misunderstanding of this impairment. *Id.* at *22; *see also Kalmbach*, 409 F. App'x at 861.

In its response, the Commissioner attempts to overcome these issues by asserting that Plaintiff's arguments as to the severity analysis are moot because her fibromyalgia was nevertheless identified as a severe impairment at Step Two. This is unpersuasive. Even though the errors noted above occurred at Step Two, the undersigned cannot overlook the impact that these errors had on other aspects of the sequential evaluation process, including evaluating the severity of Plaintiff's symptoms under the two-step inquiry noted above. As discussed previously, the errors in this assessment indicate that the ALJ has a fundamental misunderstanding of fibromyalgia—and it would be naive to believe that his misunderstanding did not pervade the remaining analysis of Plaintiff's related symptoms.

In fact, many of the factors relevant to assessing the severity of a claimant's symptoms were considered at Step Two while assessing Plaintiff's severe impairments. Before identifying fibromyalgia as a severe impairment, the ALJ assessed the location of her symptoms, "which were primarily in her cervical spine," and discussed her treatment. (Doc. No. 8-2, PageID 66). He indicated that she was treated with medication, such as Flexeril, and discussed the effectiveness of medication and exercise. *Id.* He acknowledged that she received other treatment, such as tender-point injections and physical therapy. *Id.* Discussion of these relevant factors—and the errors that occurred therein—cannot be ignored simply because such discussion occurred earlier in the assessment.

The record reflects that—despite normal test results and physical findings—Plaintiff reported symptoms consistent with fibromyalgia for some time. In his assessment,

the ALJ recognized that other typical symptoms of fibromyalgia "if clinically documented over time, include irritable bowel syndrome, chronic headaches, temporomandibular joint dysfunction, sleep disorder, severe fatigue, and cognitive dysfunction." (Doc. No. 8-2, PageID 66). Notwithstanding the general effectiveness of her medication, Plaintiff nevertheless experienced periodic episodes of exacerbation that included many of these symptoms. Plaintiff was diagnosed with irritable bowel syndrome, and complained of chronic abdominal pain. *Id.* at 67. She reported "increasing bilateral shoulder pain," "constant burning pain," "diffuse muscle aches and pains occurring diffusely tender most of her muscle beds," and "difficulty sleeping." (Doc. No. 8-8, PageID 977, 981, 984). Her symptoms were "rated as moderate to severe," and worsened with activity. *Id.* She frequently reported fatigue and joint pain. *Id.* at 990, 995, 999. Plaintiff suffered from chronic migraine headaches. (Doc. No. 8-2, PageID 65). These symptoms were reported in addition to her presenting with 18 of 18 tender points, which was entirely overlooked. Plaintiff testified that her symptoms interfered with her ability to concentrate and that she would "lose [her] words" when speaking. *Id.* She has difficulty climbing stairs in her home and walking, and her husband helps her bathe and dress. *Id.* at 103. She estimates she cannot sleep more than four or five hours per night and that she had "3-5 'good' days per month when she was able to function normally." *Id.* at 84. 103.

There was limited consideration of these symptoms and the related factors at later steps in the sequential evaluation aside from briefly addressing the periodic nature of her

9

symptoms, and reiterating the medication effectiveness that was discussed at Step Two. *Id.* at 73. Likewise, entirely absent from the sequential evaluation is any discussion of Plaintiff's daily activities. Ultimately, the ALJ found that the evidence of record did "not support the alleged loss of functioning" during the time period at issue due to Plaintiff's physical and mental capacity to function adequately, which was supported by her "normal functioning." *Id.* He concluded that limiting Plaintiff to light work "adequately addresses the location, duration, frequency, and intensity of [her] alleged symptoms, as well as precipitating and aggravating factors, to the extent that such symptoms and aggravating factors are supported by objective medical evidence and clinical findings…" *Id.*

However, the undersigned cannot find that the assessment of the severity of these symptoms is supported by substantial evidence, or that the assessment escaped error, when there was repeated reliance on Plaintiff's normal examination, testing, and functioning in assessing Plaintiff's fibromyalgia, her related symptoms and the effects of these symptoms on her ability to perform work-related activities. *See Shaw v. Comm'r of Soc. Sec.*, No. 1:16-cv-1133, 2018 WL 377383, at *17 (S.D. Ohio Jan. 11, 2018) (Litkovitz, M.J.), report and recommendation adopted, 2018 WL 806286, at *1 (S.D. Ohio Feb. 9, 2018) (Barrett, D.J.) (Finding credibility determination to be unsupported by substantial evidence because "[i]n implicitly rejecting plaintiff's testimony as to her pain and subjective complaints, the ALJ relied on normal test results and normal physical findings, none of which are relevant to the severity of plaintiff's fibromyalgia symptoms.") (citations omitted).

10

Accordingly, Plaintiff's Statement of Errors is well-taken.[1]

## VI. REMAND

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991). A remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is

---

[1] In light of the foregoing, the undersigned declines to address Plaintiff's contentions related to the medical opinion evidence and her past work history.

overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Disability Insurance Benefits should be granted.

## IT IS THEREFORE ORDERED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Kimberly R. Murphy was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

4. The case be terminated on the Court's docket.

August 31, 2021                                               *s/Sharon L. Ovington*
                                                                                             Sharon L. Ovington
                                                                                             United States Magistrate Judge